# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.M.**

**No. 20-0567** (Calhoun County 19-JA-26)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.M., by counsel Barbara Harmon-Schamberger, appeals the Circuit Court of Calhoun County's June 17, 2020, order terminating his parental rights to C.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Tony Morgan, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in considering evidence of criminal charges related to this matter, denying him an improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner was arrested the month prior and charged with 100 counts of first-degree sexual assault, 100 counts of first-degree sexual abuse, and one count of child abuse resulting in injury. It appears that the victim of the sexual assault and sexual abuse charges was not C.M. However, the DHHR did allege that petitioner restrained C.M. on two occasions, once tying him to a treadmill with

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Additionally, we note that petitioner was originally represented by Betty Clark Gregory, who filed the briefing on petitioner's behalf in this matter. However, on October 23, 2020, petitioner's current counsel moved to be substituted as counsel. By order entered on December 3, 2020, the Court granted that motion and also noted that the matter was mature for consideration.

1

duct tape and once with rope. Photographic evidence of these incidents was recovered by the State Police in serving a search warrant upon petitioner's residence. Further, C.M. was discovered to have decaying teeth, and the DHHR alleged that petitioner and the mother failed to obtain appropriate medical attention for him.

Following the petition's filing, petitioner waived his preliminary hearing. At an adjudicatory hearing in December of 2019, he stipulated to the allegations that he medically neglected C.M., resulting in the dental care issues, and that he emotionally abused the child, during the treadmill incidents. He later filed a motion for an improvement period. Prior to the dispositional hearing, petitioner underwent a psychological evaluation.

In May of 2020, the circuit court held a hearing to address petitioner's motion for an improvement period and disposition. One day prior to the hearing, petitioner filed a "Motion to Strike Verbiage from Report" in which he asserted that the DHHR's disposition report made reference to his arrest for sex crimes as set forth in the petition. According to petitioner, the DHHR previously asserted that it did not intend to use information related to his arrest in prosecuting this abuse and neglect matter and further refused to provide discovery related to his arrest. While acknowledging that the abuse and neglect matter primarily concerned petitioner's abuse of C.M., the court nonetheless found that "the fact of the matter is that the evidence of the infant respondent's abuse was discovered during service of a search warrant in the sexual abuse case." As such, the court denied petitioner's motion, but noted that the reference to his arrest was "simply . . . an allegation . . . and it will be considered only as such." Additionally, petitioner's psychological evaluation was admitted into evidence.

During the hearing, petitioner sought to continue the matter so he could bring in as a witness the individual who photographed C.M. being restrained in the photos described in the petition. Following the hearing but prior to the entry of the order on appeal, petitioner also filed a motion to supplement the record with this witness's testimony. The court denied these requests, noting that petitioner's attempt to establish that the conduct depicted in the photographs did not constitute abuse "related to adjudication, which had already occurred." The court further noted that "[t]he primary issue at disposition is [petitioner's] understanding and agreement as to what needs to change in order for him to safely parent his child." Following the presentation of evidence, including petitioner's testimony, the court made findings regarding petitioner's conduct. According to the court, when C.M. was first removed from petitioner's care he was five years old but still soiling himself, wearing diapers, and refusing to sit on a toilet. Further, the child's medical neglect was so severe that he had fifteen cavities, "most worn down to the nerve, and was required to be fully sedated for the necessary dental procedures." When confronted with this information at an early multidisciplinary team meeting, petitioner denied doing anything wrong, "began yelling and cussing, claiming that he was going to 'sue police and that f***ing bitch that lied on me' and that 'no one is doing their f***[i]ng jobs."

The court further noted that petitioner's psychological evaluation deemed his Minnesota Multiphasic Personality Inventory invalid because of "attempts . . . to portray himself in an unrealistically positive manner" and that the child abuse potential assessment met the criteria for "faking good." Further, although petitioner admitted to emotionally abusing C.M. during the evaluation, he nonetheless claimed that C.M. applied the tape and rope. During his testimony at

the hearing, petitioner explained how C.M. managed to restrain himself to the treadmill, an explanation that the court found was "not at all believable, especially in view of the photographs earlier reviewed and the child's low functioning." During his evaluation, petitioner also admitted to medical neglect, but nonetheless stated that he did not know how severe the child's teeth were. The court found that this assertion could not be reconciled with the photographic evidence of the child's severe dental neglect.

Based on this evidence, the court found that petitioner "continually failed to fully acknowledge the main problems which caused [C.M.] to be removed from his care, and he repeatedly asserts that the child tied himself to the treadmill while playing." Further, the court found that petitioner downplayed the child's severe dental neglect. "Essentially," the court found, petitioner "blames everyone else for the issues" and "[h]is attitude and demonstrated threatening behaviors in this case make it unsafe to consider reunification." Acknowledging that petitioner testified that he would do whatever was required to regain custody of his son, the court found that petitioner was "only saying what he thinks the [c]ourt wants to hear, not because he acknowledges that he has done anything wrong." Based on these findings, the court denied petitioner's motion for an improvement period and found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Finding it necessary for the C.M.'s welfare, the court then terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first alleges that the circuit court should not have considered evidence regarding his criminal charges because the State refused to supply discovery relating to those charges and "agreed not to use that case for purposes of this case." Simply put, this

---

[2]The mother's parental rights were also terminated below. The permanency plan for the child is adoption in a foster home.

argument is a red herring meant to distract from the overwhelming evidence of petitioner's total failure to acknowledge the conditions of abuse and neglect that are wholly unrelated to the criminal investigation against him. As set forth above, the circuit court's dispositional order does not rely in the slightest upon the 200 charges of sex crimes for which petitioner was arrested. The only reason the charges were even mentioned in the order is because, as the circuit court pointed out, it was impossible to divorce the criminal proceedings from the instant matter because the photos of C.M. being restrained were uncovered during the State Police's execution of a search warrant in relation to those charges. The only other reference to the charges in the dispositional order comes from a recitation of the psychological evaluation where the psychologist indicated that petitioner's prognosis if the charges were substantiated was "extremely poor to non-existent," versus a prognosis of "guarded" if the charges remained unsubstantiated. Far from the constant references petitioner asserts, the record is clear that the criminal charges were only addressed when necessary due to the fact that they were intertwined with the procedure of these proceedings. At any rate, the court was clear that it was aware that the charges against petitioner were merely allegations and would be considered only as such, while the abuse and neglect for which he was adjudicated was fully substantiated, as was his refusal to acknowledge his actions. Petitioner is entitled to no relief in this regard, given that the facts of this case show that there was overwhelming evidence, absent the criminal charges of which he complains, to deny him an improvement period and terminate his parental rights.

Indeed, the record reveals no abuse of discretion in denying petitioner an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Further, this Court has established that "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Because petitioner continued to refuse to accept responsibility for his conduct, even going so far as to attempt to relitigate adjudication after the holding of the dispositional hearing by presenting a witness who would testify that his restraint of the child did not constitute abusive behavior, it is clear that he failed to fully acknowledge his conduct. As this Court has long held, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Because petitioner rendered the conditions of abuse and neglect untreatable, we find no error in the denial of his motion for an improvement period.

This same evidence also supports the circuit court's termination of petitioner's parental rights. Given that petitioner refused to acknowledge his abusive and neglectful conduct, the court had ample evidence upon which to find that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination of petitioner's parental rights was necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further,

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 17, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton